JOHNSON, Judge.
In this tort suit for damages to Joseph Demma’s automobile the Civil District Court for the Parish of Orleans rendered judgment against both defendants, in solido, for Fifty Dollars payable to Joseph Demma, the owner of the automobile, and for One Thousand Two Hundred Ninety Eight Dollars payable to Liberty Mutual Insurance Company, the owner’s collision insurer. Defendant Adolpho Bello, Jr., has apppeal-ed suspensively. Appellant’s counsel appeared, made oral argument and filed a written brief. No other appearance was made in this Court. Therefore, the only question presented by this appeal is the correctness of the judgment against Adolpho Bello, Jr.
*745 Plaintiff Demma was the owner of a 1960 Peugeot automobile, which in the afternoon of October 1, 1960, was parked against the curb on the river side of North Claiborne Avenue headed downtown in the City of New Orleans. The rear end of that car was about four feet from the intersection of Music Street.
Plaintiffs have charged both defendants with negligence. At the beginning of the trial the amount of the damage to plaintiff’s car was agreed on by stipulation. Counsel for plaintiffs called the two defendants on cross-examination as his only witnesses. Actually there is very little conflict in the testimony of the two defendants.
Defendant Bello testified that Music Street is a dirt street and is secondary to North Claiborne Avenue, which at that point consisted of two lanes — one lane for traffic going in a downtown direction and the other lane for traffic going uptown toward Canal Street; that there is no neutral ground along the center of North Claiborne Avenue at that point; that he was driving his Pontiac automobile in a downtown direction in the right lane of North Claiborne Avenue at about 25 to 30 miles per hour that when he first saw defendant Carambot’s Oldsmobile it was stopped at the stop sign on Music Street headed toward the river, and that he did not reduce his speed because he had no indication that Carambot would leave his stopped position. Bello said that when he was about thirty to thirty-five feet from Music Street Carambot pulled away from his stopped position at the stop sign and entered the intersection to cross North Claiborne Avenue that about the time his Pontiac was entering Music Street the front end of Carambot’s Oldsmobile had reached to above three feet over the center line of North Claiborne Avenue in Bello’s right lane that in order to avoid striking the Carambot car it was necessary to swerve suddenly to his right and he applied his brakes at the same time. At that juncture he had room enough to straighten out and continue without striking either the Carambot Oldsmobile or the parked Peugeot, but Carambot started going across some more. Bello said this caused him to swerve further to his right and in doing so his Pontiac struck the rear end of plaintiff’s parked automobile, causing the damage herein claimed. There is no proof of what was the legal speed limit at that location and there is no evidence that Bello was traveling at an illegal or excessive speed under the circumstances.
Carambot’s testimony clearly supports Bello’s version of the accident, except that Carambot contends that the front of his car did not extend into the downtown traffic lane in which Bello was traveling. However, the only disinterested witness, Rodney Guidry, says that Carambot did not stop until the front end of his Oldsmobile was some three feet in Bello’s lane as Bello entered the intersection.
Carambot testified that after he stopped at the stop sign on Music Street he looked from the left to the right and then he saw Bello about fifteen feet from the intersection; that he drove into the intersection and stopped again with his front bumper at the center line of North Claiborne Avenue. He said “Before Bello hit me, he went around and hit the parked car.” Also, he said that the Bello Pontiac passed three or four feet in front of him when the Pontiac should have continued straight down the street without turning. There was no contact between the cars of Caram-bot and Bello.
The matter of Carambot’s negligence is not before us for review because Carambot did not appeal. The following excerpt from Carambot’s testimony is proof enough that Bello was not guilty of any negligence which caused him to strike plaintiff’s parked car. The Court asked Caram-bot why he pulled out into the intersection after he saw Bello’s car coming within fifteen feet of the intersection when he, Carambot, was stopped at the stop sign. Carambot answered: “I thought he was — ■ would slow down, you know, and let me pass.” The Court asked again: “Why did *746 you leave your point of safety then at the stop sign and pull in front of him when he was only fifteen feet from the intersection and you said he was traveling about thirty miles per hour ?
“A — Yes, sir.
“Q — Why did you do that ?
“A — I don’t know, sir.
“Q — Were you in a hurry to get across the intersection ?
“A — No, sir.
“Q — Were you trying to stop him or something of that nature?
“A — No, sir.
“Q — But you just deliberately pulled into the intersection when he was coming over thirty miles per hour, only fifteen feet from the intersection, and at that time you were at the stop sign is that right?
“A — Yes, sir.”
It should be noted that Bello said he was some thirty to thirty-five feet away when Carambot moved away from the stop sign.
Defendant Carambot called Rodney Guidry as a witness. Guidry lived sixty-five feet downtown from Music Street on the river side of North Claiborne Avenue. He was standing at the curb in front of his home and saw the whole thing. He said that Carambot’s car came into and across the intersection when Bello’s car was about twenty feet from the intersection and that Carambot’s car stopped with its front end about two or three feet over the center line of North Claiborne Avenue. As Bello’s car swerved to the right he heard the squeal of brakes and later saw that Bello’s car left skidmarks before striking the parked car. He thought the Bello car was going to ram the Carambot car in'the middle of the street, but Bello turned in time to avoid it. He said the Carambot car stopping, the Bello car swerving and the application of the brakes by Bello were all done simultaneously. He did not think it would have been possible for the Bello car to miss the Carambot car and continue down North Claiborne Avenue without hitting the parked car and that the damage to the parked car was at the left side of the back end-
In the case of Emmco Insurance Company et al. v. Carambat, La.App., 145 So.2d 83, Bello and his collision insurer, as a partial subrogee, brought suit against this defendant Carambot to recover the damage done to Bello’s automobile in this same accident. One of the defenses urged by Carambot in that case was his alternative plea of contributory negligence on the part of Bello. The First City Court of New Orleans held that Bello was free from negligence and gave judgment in favor of the plaintiffs and against defendant Carambot. On defendant’s appeal to this court that judgment was affirmed. This court said in that decision that the fact that the Ca-rambot car did not strike Bello’s vehicle did not alter the conclusion that Carambot’s negligence was the sole proximate cause of the accident, citing Gay v. United States Fidelity & Guaranty Co., La.App., 76 So.2d 60 and the authorities therein referred to.
This appeal now before us involves the exact facts of the same accident. Rodney Guidry did not testify in the City Court case where Bello and Carambot were the only witnesses. On the trial of this case in the District Court Guidry was called on behalf of defendant Carambot, but his testimony clearly supports and strengthens Bello’s defense. Guidry was entirely disinterested.
This record presents a typical picture of the operator of a motor vehicle, Bello, traveling on a major thoroughfare in close proximity to an intersection of a minor street, with the directional and statutory right-of-way and with every pertinent rule of the road and presumption of right in his favor, when suddenly he is faced with an emergency which he did nothing wrong to create. Bello acted quickly by the exercise of the best judgment possible under *747 the circumstances. The damages claimed herein did not result by his fault and he cannot be held to pay them nor any part of them. Joseph v. Fulco, La.App., 145 So. 2d 599; Askew v. Hamilton, La.App., 146 So.2d 471; Jenkins v. Brignac, La.App., 146 So.2d 649; Dane v. Canal Insurance Company, 240 La. 1038, 126 So.2d 355; Chase v. Burley, La.App., 76 So.2d 587; Olivier v. Baldwin, La.App., 48 So.2d 806.
The judgment appealed from is reversed and plaintiff’s suit is dismissed as to Adolpho Bello, Jr., the plaintiff to pay costs.
Reversed.